UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John David SANCHEZ,<br><br>                              Plaintiff,<br><br>v.<br><br>Craig KOENIG,<br><br>                              Defendant. | Case No.:  20-cv-01783-BAS-BGS<br><br>**REPORT & RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 4]** |

## I.   INTRODUCTION

Petitioner John David Sanchez ("Petitioner"), a state prisoner proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging his 2017 conviction in San Diego County Superior Court case number SCE359409.  (ECF No. 1.)[1]  Respondent Craig Koenig ("Respondent") moved to dismiss the Petition contending: (1) the Court may not grant relief as to Petitioner's Fourth Amendment claim since he previously raised it, and was rejected, in state court; (2) the Court may not grant relief for a question of state law that had no effect on the evidence;

---

[1] The Court cites the CM/ECF pagination when referencing the Petition and attached exhibits (ECF No. 1), Respondent's Motion to Dismiss (ECF No. 4), Petitioner's Opposition (ECF No. 6) and all Lodgments (ECF No. 5).

and (3) any new claims are procedurally defaulted.  (ECF No. 4 at 4–10.)  Petitioner's opposition to the motion ("Opposition") was filed on December 11, 2020.  (ECF No. 6.)

This Report and Recommendation is submitted to United States District Judge Cynthia A. Bashant pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.   Based on the documents and evidence presented, and for the reasons set forth below, the Court **RECOMMENDS** that Respondent's Motion to Dismiss (ECF No. 4) be **GRANTED** and that this action be **DISMISSED**.

## II.   FACTUAL BACKGROUND

### A. Underlying Offense

In February 2016, Kristie P. left a bar with S.C., who requested a ride from a commercial ridesharing service for Kristie after she felt too intoxicated to drive home. (ECF No. 5-10 at 2–3.)  Petitioner arrived driving a silver or gray Scion.  (*Id.* at 3.)  After driving S.C. to his car a few blocks away, S.C. asked Petitioner to take Kristie wherever she wanted to go.  (*Id.*)  After Kristie gave her home address, Petitioner entered it into his phone and left North Park.  (*Id.*)  Two times during the drive home, Kristie asked Sanchez to pull over to the side of the road because she did not feel well and had to vomit.  (*Id.*) Petitioner first stopped on the side of the freeway, where Kristie leaned out of the rear passenger side door to vomit.  (*Id.*)  Kristie leaned back into the car after vomiting and laid on the rear seat, where Petitioner joined her.  (*Id.*)  However, once Petitioner began rubbing her thigh underneath her dress, Kristie asked that he continue driving.  (*Id.*)  A few blocks from Kristie's home, Petitioner stopped a second time and ultimately got into the back seat as Kristie again leaned out of the door.  (*Id.*)  During this second stop, Petitioner leaned over Kristie, straddled her with his knees on either side of her, pulled her undergarments down to her knees, and inserted his penis into her vagina.  (*Id.*)

Kristie questioned the Petitioner's actions multiple times, but he failed to respond until Kristie started crying, at which point the Petitioner stopped and mentioned that they had a mutual friend, while also telling her that his first name was "Johnny" and his last

name was "Sanchez." (*Id.* at 3–4.) "Kristie took her belongings, got out of Sanchez's vehicle, noted the first digit of the license plate, and walked the remaining few blocks to her home. Kristie plugged in her battery-dead mobile telephone and called 911 to report the attack." (*Id.* at 4.)

El Cajon Police Officers responded at approximately 6:00 a.m, took statements and other formalities regarding the incident, and had Kristie examined by the Sexual Assault Response Team. (*Id.*) After speaking with the officers, S.C. independently confirmed what Kristie had told the officers about their date up until the time that S.C. was dropped off at his car and provided officers with a copy of the text message he received from the ridesharing service; along with the receipt that indicated the fare for transporting Kristie and the driver's first name, "John." (*Id.*) A search warrant obtained the records from the ridesharing service, which disclosed the Petitioner's identity and a copy of his driver's license photograph. (*Id.*) Further, a public records check on the Petitioner indicated that he had registered a 2012 Toyota Scion with California license plates "6xxxxxx" at a specified address on Dayton St. in San Diego. (*Id.*) Police detectives went to the address, where they found the vehicle and detained the Petitioner. (*Id.*)

**B. Search Warrant No. E2016-125 ("SW-125")**

On February 26, 2016, the Honorable Lantz Lewis issued SW-125 in the California Superior Court in San Diego. (ECF Nos. 1-3 at 11; 5-1 at 121.) The People of the State of California maintained that there is substantial probable cause for the issuance of SW-125 and that the information that will be obtained was relevant to the ongoing criminal investigation in connection with possible violations of California law. (ECF No. 1-3 at 2.) As for the "location, property, and/or persons to be searched," SW-125 identified the specific address on Dayton Street, the Toyota Scion with California license plates 6xxxxxx, and the Petitioner (identified by race, age, height, weight, birthdate, and driver's license number). (*Id.*) SW-125 then listed nine categories of property to be seized, with the following category being relevant to this proceeding:

> 5. To seize, view, and forensically examine all computer hardware and software and any other device capable of storing text or images in an electronic or digital format, including cellular phones, Blackberries, personal data assistants (PDAs), and the like[.]

(*Id.* at 3 ["Paragraph 5"].)

One of the officers prepared an affidavit in support of SW-125, wherein the officer identified the same location, property, and person to be searched, as well as the same nine categories of property seized.  (*See* ECF Nos. 1-3 at 2; 5-10 at 5.)  In his Affidavit, the officer testified to his background and training, while also describing the events that occurred from when S.C. and Kristie left the bar until the time the officer's affidavit was submitted.  (*Id.* at 6–10.)  Based on his background, experience, and qualifications and the facts surrounding this incident, the officer presented the following opinion evidence:

> Based on the above investigation I believe that [the Petitioner] knowingly committed Forcible Rape of an Intoxicated Person in violation of Penal Code section 261(A)(3) in El Cajon.  Additionally, since [Kristie] stated the sexual assault occurred in the backseat of [the Petitioner's] vehicle, it is reasonable to believe that there is evidence in that vehicle which helps prove or disprove that [the Petitioner] is involved in the crime.

> Based on my training and experience, I know that men who sexually assault women will often keep souvenirs of these encounters as "trophies" o[f] their "conquests.["]  These souvenirs can include [. . .] some sort of audio, video, or photographic record of the event.  The souvenirs not only allow the attacker to memorialize the event but also to "re-live" the event at future dates.

> Likewise, some attackers will also memorialize the event for future reference by writing about it in a diary or journal.  Nowadays, such records are maintained in computer files not only because computers have largely replaced paper records, but also due to the ability to more quickly erase (destroy) such records if the attacker believed he was being investigated or was otherwise compromised.

> My training and experience has shown that the property to be seized will provide corroborating evidence that [the Petitioner] is the perpetrator of the sexual assault on [Kristie].  This additional evidence is critical in proving identity.

> Therefore, based on my training, experience, and the above facts, I believe I have substantial cause to believe the above-described property or a portion thereof will be at the described premises when the warrant is served.
>
> Based on the aforementioned information and investigation, I believe grounds for the issuance of a search warrant exist as set forth in Penal Code section 1524.

(*Id.* at 10–11.)  After considering the officer's affidavit, Judge Lewis found "substantial probable cause" for the issuance of the requested search warrant and issued SW-125. (ECF No. 5-10 at 7.)  Later that day on February 26, 2016, the officer searched the location, property and persons authorized pursuant to SW-125.  (*Id.*)  As relevant to the issues in this case, the search inventory disclosed that the officer seized an "android cell phone" from Petitioner's car (cellphone) and a "MacBook laptop" from Petitioner's bedroom (laptop).  (*Id.*)  Both Petitioner and the Government agreed that two subsequent search warrants were issued for the searches of the cellphone and the laptop.  (*Id.* at 7–8.)  The search of Petitioner's laptop revealed numerous videos and several photographs, which the Court accepted the government's description as depicting crimes in addition to Kristie's sexual assault.  (*Id.* at 8.)

## III.   PROCEDURAL BACKGROUND

### A. Charges, Motion to Quash SW-125 & Suppress Evidence Pursuant to Penal Code § 1538.5, Guilty Plea, Judgment

On March 28, 2016, approximately one month after the sexual assault of Kristie and the seizure of Petitioner's property, Petitioner was charged with one felony count of rape of an intoxicated person, in violation of Penal Code § 261(a)(3).  (ECF No. 5-1 at 9–11.)  After the seizure and subsequent search of the cellphone and laptop, the district attorney twice amended the earlier complaint, once on May 24, 2016 and again on July 21, 2016, ultimately alleging 28 felony counts and 3 misdemeanor counts against the Petitioner.  (*Id.* at 12–30.)  Later, on September 8, 2016, the district attorney filed a 34-count information, asserting 31 felony violations and 3 misdemeanor violations.  (*Id.* at 31–54.)

In July 2017, the Petitioner filed a Motion to Quash SW-125 and Suppress Evidence Pursuant to Penal Code § 1538.5, which sought to suppress the evidence obtained from SW-125. (*Id.* at 79–90.) The Petitioner argued both that probable cause did not support the issuance of SW-125 under § 1538.5 and that SW-125 failed to comply with the Electronic Communications Privacy Act (ECPA). (*Id.*) The trial court denied the Petitioner's motion, indicating that the officer's affidavit set forth sufficient evidence to establish probable cause for the issuance of SW-125 and that SW-125 did not violate the ECPA. (ECF No. 5-10 at 9.)

On August 21, 2017, the district attorney then filed an amended information, alleging 31 felony counts (one with special allegations) and three misdemeanor counts (each with special allegations) against the Petitioner. (ECF No. 5-1 at 43–54.) As part of the same proceedings, Petitioner was arraigned on the amended information, pleaded not guilty and denied all of the allegations, and then changed his plea to guilty to all counts and special allegations. (*Id.*; *see also* ECF Nos. 5-2 at 45–52, 171; 5-5 at 8–20.)

In November 2017, the Court sentenced the Petitioner to a total prison term of 80 years and four months, imposed protective orders as to all of the victims, and ordered that the Petitioner pay specified fees, fines, and penalties. (*Id.* at 75–100, 172–176.) The Court further denied the Petitioner's request for certificate of probable cause, stating that the defendant had not shown "reasonable constitutional, jurisdictional, or other grounds for appeal relating to the legality of the proceedings." (*Id.* at 139–141.) The Petitioner timely appealed. (*Id.* at 138.)

**B. Appellate Opinion & Petition for Review**

On appeal, the Petitioner first argued that the seizures of the cellular telephone found in his car and the laptop computer found in his bedroom were not reasonable under the Fourth Amendment of the United States Constitution. (ECF No. 5-7 at 8–14.) Petitioner contended that there was no probable cause to seize these electronic devices since there was no evidence to support the officer's affidavit and there was no nexus between the alleged crime and the laptop. (*Id.* at 11–14.) The second argument raised by the Petitioner

was that SW-125 did not comply with certain statutory requirements of the ECPA and that the evidence obtained as a result should have been suppressed. (*Id.* at 14–17.) Petitioner claimed that SW-125 did not specify the time periods for the electronic information sought and did not specify the types of information sought. (*Id.* at 16.) Petitioner then argued that the good faith exception did not apply to the officer's seizure of the Petitioner's electronic devices. (*Id.* at 17–19.)

On February 25, 2019, the California Court of Appeal issued its order regarding the Petitioner's appeal from the judgment of the Superior Court of San Diego County. (*See* ECF No. 5-10.) The Court of Appeals affirmed the Superior Court's judgment, holding that the trial court did not err in denying the Petitioner's § 1538.5 motion and did not err in finding that Petitioner did not establish reversible error despite SW-125's alleged noncompliance with the ECPA. (*See id.* at 2, 21.)

The Court of Appeal found that the evidence submitted in support of the issuance of the SW-125 established probable cause and that the trial court did not err in determining there was "a fair probability" that evidence of the sexual assault would be found on the cellphone and/or the laptop. (ECF No. 5-10 at 11–16.) The Court of Appeals indicated that the evidence in support of the officer's "belief" is the "foundational facts associated with his 11 and a half years of 'training and experience' about sexual assaults" and that the combination of the officer's opinion testimony and the case-specific evidence provided the probable cause sufficient for the issuance of a warrant to seize the Petitioner's cellphone and the laptop. (*Id.* at 12–13.) The Court of Appeals stated that the scope of the search was limited to two specific locations where Petitioner's laptop might be located, the Petitioner's vehicle and residence, if Petitioner had one. (*Id.* at 14.) The Court of Appeals reasoned that the trial court could have easily inferred that, if Petitioner's cellphone contained evidence of Kristie's rape, Petitioner could have immediately transferred the recorded evidence of the attack to his laptop "to more quickly erase (destroy) such records" on the cellphone that he uses in public on a regular basis as a rideshare driver. (*Id.* at 14–15.) As for Petitioner's argument that there was no mention of any audio or video recording

in Kristie's statement, the Court of Appeals reasoned that the foundation of the officer's opinions regarding men who sexually assault women were facts related to his knowledge, training, and experience, not what Kristie observed.  (*Id.* at 15.)  As for Petitioner's claim that his identity "was not at issue when [the officer] requested SW-125," the Court indicated that Petitioner took the officer's testimony out of context since the testimony sought evidence to corroborate that the Petitioner committed the crime, not that the officer sought evidence to corroborate the Petitioner's identity.  (*Id.* at 15–16.)

As regards to Petitioner's argument that SW-125 did not comply with the ECPA, the Court of Appeals held that the Petitioner did not establish reversible error.  (*Id.* at 16–21.)  For argument sake, the court accepted Petitioner's argument that SW-125 did not contain the particularity required by § 1546.1(d) of the ECPA, and thus did not comply with the ECPA.  (*Id.* at 19.)  The court still found that the Petitioner had not established reversible error based on this statutory noncompliance for two reasons.  (*Id.*)

The Court indicated that the ECPA's particularity requirement is a "statutory concept limited to what is described in a search warrant—in this case, the particularity of 'the time periods covered' and 'the types of information sought' [ ]—and has nothing to do with probable cause or the showing made to support issuance of the warrant."  (*Id.* at 19–20.)  Further, the Court reasoned that a "violation of the ECPA does not establish a violation of the United States Constitution" and that contrary to Petitioner's position, "the particularity requirements for describing electronic property in a warrant under [§1546.1(d)] is not the equivalent of a lack of probable cause to issue the warrant under the Fourth Amendment."  (*Id.* at 19–20.)

Further, the Appellate Court held that even if paragraph 5's authorization of access to electronic information was statutorily noncompliant, i.e. to view and examine the cellphone and laptop, the court indicated that the Petitioner had not demonstrated prejudice by the alleged ECPA violation.  (*Id.* at 20.)  The court pointed out that the Petitioner had not even established that the government ever attempted or gained access to the cellphone or laptop pursuant SW-125, where in fact the parties agreed that SW-125 was used

exclusively to seize the electronic devices. (*Id.*) The court stated that both the Petitioner and the government indicated that there were two later warrants (Nos. E2016-254 and E2016-352) that were used for the actual forensic examination of the cellphone and laptop. (*Id.* at 20–21.)

The Petitioner then filed his Petition for Review on April 8, 2019, which was denied on June 12, 2019. (ECF Nos. 5-11, 5-12.)

**C. The Instant Federal Habeas Corpus Petition (ECF No. 1)**

On September 10, 2020, the Petitioner filed his habeas petition, arguing that (1) he was denied his Sixth Amendment right to a Fair Trial and Fourteenth Amendment right to Due Process when he pled guilty in light of the trial court's erroneous denial of his § 1538.5 motion; and (2) the state court's erroneous determination of the facts in light of the evidence presented, in light of California's ECPA laws, violated his Fourteenth Amendment right to due process and equal protection of the laws. (*See* ECF No. 1.)

**D. Respondent's Motion to Dismiss & Petitioner's Opposition (ECF Nos. 4, 6)**

On November 5, 2020, Respondent filed his Motion to Dismiss Petitioner's Writ of Habeas Corpus. (ECF No. 4.) Respondent argued that Ground One of Petitioner's habeas petition should be dismissed, since the state-court record and appellate opinion shows that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim and is precluded from further consideration under *Stone v. Powell*, 428 U.S. 465 (1976). (ECF No. 4-1 at 11–13.) Respondent also requested that the Court dismiss Ground Two of Petitioner's habeas petition, stating that there is no basis for granting relief because it only involves a violation of state law, the ECPA. (*Id.* at 13–14.) Further, Respondent argued that Petitioner may be attempting to raise additional legal claims for the first time, such as the denial of his right to a jury trial under the Sixth Amendment and denial of his right to due process and equal protection under the Fourteenth Amendment. (*Id.* at 14–16.) Respondent stated that there is still no reason to consider any new grounds of relief since these new claims were not previously raised in state court. (*Id* at 14.) Respondent also lodged documents relevant to his motion. (ECF No. 5.)

1    On December 11, 2020, Petitioner responded in Opposition to Respondent's Motion

2  to Dismiss ("Opposition").   (ECF No. 6.)   Petitioner claimed that *Stone* does not

3  categorically bar Petitioner's writ of habeas relief, since his case never went to trial and

4  Petitioner then waived his right to a trial and pled guilty as a result of the judge's denying

5  the motion to suppress evidence due to considering the non-suppressed, highly prejudicial

6  evidence that would likely be used against him at trial.  (*Id.* at 3.)  Petitioner also argued

7  that his ECPA claim is cognizable in federal court due to being fundamentally connected

8  to the Fourth Amendment and that even if the Court declines to recognize the ECPA's

9  constitutional underpinnings, arbitrary and capricious applications of state laws are still

10  cognizable in habeas proceedings.  (*Id.* at 4–5.)  As to whether Petitioner raised additional

11  legal claims for the first time, Petitioner argued that these arguments were not ripe until he

12  exhausted his remedies in state court as to the Fourth Amendment claim and that asserting

13  these arguments in state court would have been "premature and futile."  (*Id.* at 7.)

## IV.    DISCUSSION

### A. Motion to Dismiss Standard

16    A motion to dismiss under Federal Rule 12(b)(6) may be based on either a "lack of

17  a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable

18  legal theory."  *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir.

19  2008) (citing Fed. R. Civ. P. 8(a)(2)).  A motion to dismiss should be granted if the plaintiff

20  or petitioner fails to proffer "enough facts to state a claim to relief that is plausible on its

21  face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

22  plausibility when the plaintiff pleads factual content that allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

24  *Iqbal*, 556 U.S. 662, 678 (2009).

25    When considering a Federal Rule 12(b)(6) motion to dismiss, the Court must "accept

26  all allegations of material fact in the complaint as true and construe them in the light most

27  favorable to the non-moving party."  *Cedars-Sinai Med. Ctr. v. Nat'l League of*

28  *Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007).  However, it is not necessary for the Court

"to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[T]hreadbare recitals" of the elements of a cause of action, "supported by mere conclusory statements," are not enough. *Ashcroft v. Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. On the other hand, "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## B. Ground One – Fourth Amendment Claim

### 1. Parties' Positions

Respondent argued that the Petitioner's Fourth Amendment claim should be dismissed, since the state-court record and appellate opinion show that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim and is precluded from further consideration under *Stone*. (ECF No. 4-1 at 11–13.) Respondent indicated that this is shown by Petitioner filing a motion to suppress under California Penal Code § 1538.5 prior to trial, and acknowledging that he re-raised this claim on appeal. (*Id.*) Respondent claimed that Petitioner relied on the same arguments throughout his state court litigation and there is no reason to treat Petitioner's guilty plea as a distinguishing factor under *Stone*. (*Id.* at 13.)

Petitioner stated that Respondent misinterprets and mischaracterizes his argument, stating that he is not directly challenging the state court's ruling regarding the unconstitutional search of the electronic devices. (ECF No. 6 at 2.) Petitioner claimed that he was denied the right to a fair trial in light of the court's erroneous ruling regarding the unconstitutionally seized evidence as well as the charges unrelated to the evidence. (*Id.*) Petitioner stated that *Stone* does not categorically bar Petitioner's habeas petition since his case never went to trial. (*Id.* at 3.) Petitioner argued that he waived his right to a trial and

pled guilty as a result of the court denying his § 1538.5 motion due to considering the non-suppressed, highly prejudicial evidence that would likely be used against him at trial.  (*Id.*)

### 2. Analysis

Petitioner claimed that he was denied his Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process, since he pled guilty in light of the state court's alleged erroneous ruling on his § 1538.5 motion.  (ECF Nos. 1-2 at 9–15; 6 at 2–4.)  Although Petitioner argued that his "Sixth and Fourteenth Amendment rights to due process and a fair trial" were violated, Petitioner's argument primarily concerns whether the trial court wrongfully denied the Petitioner's § 1538.5 motion pursuant to the Fourth Amendment.  (ECF Nos. 1-2 at 10 ("[T]he impetus for the violation of these constitutional rights was a violation of [Petitioner's] Fourth Amendment right [. . .]  The state court wrongfully denied [Petitioner's] motion to suppress evidence based on an unreasonable search and seizure pursuant to the Fourth Amendment."); 5-1 at 84–87; 5-5 at 3–5; 5-10 at 10–16; 6 at 3–4.)   "[A] Fourth Amendment claim is not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court."  *Stone*, 428 U.S. at 481–82; *see also Newman v. Wengler*, 790 F.3d 876, 878 (9th Cir. 2015) (holding *Stone* survived the passage of the AEDPA).  Thus, Petitioner is unable to be granted federal habeas corpus relief as to Ground One if the state court provided an opportunity for full and fair litigation of a Fourth Amendment claim.  *Stone*, 428 U.S. at 494.

In determining whether a petitioner has had a full and fair opportunity to litigate a claim in state court, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."  *Ortiz–Sandoval*, 81 F.3d 891, 899 (9th Cir. 1996).  Courts may also consider the extent to which the claim was briefed before and considered by the state appellate courts.  *Terrovona v. Kincheloe*, 912 F.2d 1176, 1178–79 (9th Cir. 1990); *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981).  Further, the Ninth Circuit has already determined that California provides criminal defendants with such a full and fair opportunity through the

procedures of California Penal Code § 1538.5, which allows for defendants to move to suppress evidence on the ground that it was obtained in violation of the Fourth Amendment. *Gordon v. Duran*, 895 F.2d 610, 613–14 (9th Cir. 1990); *see also Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983); *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977). In *Gordan*, the Ninth Circuit found it unnecessary to reach the issue of whether or not the petitioner's Fourth Amendment claim was, in fact, fully and fairly litigated, and held that the mere fact that the state of California provides an opportunity to fully and fairly litigate Fourth Amendment claims precludes federal habeas review, irrespective of whether or not the petitioner availed himself of the opportunity. 895 F.2d at 613–14.

Accepting all allegations of material fact as true and construing them in the light most favorable to the non-moving party, the Court finds that the Petitioner failed to proffer enough facts to state a claim to relief that is plausible on its face. After carefully reviewing the parties' briefs and the records lodged, the Court finds that Petitioner was provided a full and fair opportunity to litigate his § 1538.5 motion in his attempt to suppress the evidence found pursuant to SW-125 based on violating the Fourth Amendment. The record shows that Petitioner, through his attorney, filed a § 1538.5 motion seeking to quash and suppress the evidence obtained pursuant to SW-125, which was used to seize his cellphone and laptop. (ECF No. 5-1 at 79–90.) In the state trial court, the parties briefed this Fourth Amendment claim and also had the opportunity to be heard on this issue before the Honorable Evan P. Kirvin, on August 21, 2017. (ECF Nos. 5-1 at 84–87, 125–29; 5-5 at 3–8.) After considering the parties' briefs and providing an opportunity to be heard on the issue, the court denied Petitioner's § 1538.5 motion, finding that there was probable cause for the issuance of SW-125, and even had there been no probable cause, the police officers acted in good faith in its execution. (ECF No. 5-5 at 8.) Thus, by litigating his Fourth Amendment claim in state court pursuant to Penal Code § 1538.5, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. *See Gordon*, 895 F.2d at 613–14 (finding that defendant had a full and fair opportunity to litigate his Fourth Amendment claim in state court based on defendant's ability to move to suppress evidence under

1538.5); *Harris v. Kernan*, No. 315CV001794GPCPCL, 2017 WL 3669011, at *8 (S.D. Cal. Aug. 2017) ("A motion to suppress brought pursuant to Penal Code § 1538.5 provides a defendant with the full and fair opportunity to litigate contemplated by Powell.").

Moreover, Petitioner was provided with the opportunity to have the trial court's ruling reviewed within the California judicial system through his arguments on appeal. Petitioner presented this issue to the California Court of Appeals, arguing that the trial court erred since there was no substantial evidence to support its decision in denying his § 1538.5 motion.  (ECF Nos. 5-7 at 8–14; 5-9 at 4–9.)  The Court of Appeals denied this claim, indicating that the Petitioner had not met his burden in establishing a reversible error and that the trial court did not error in determining that there was a "fair probably" that evidence of the rape would be found on the electronic devices.  (ECF No. 5-10 at 11–16.)  The California Court of Appeal addressed Petitioner's argument and found that the officer's affidavit contained substantial evidence of probable cause for issuing SW-125 to seize Petitioner's cellphone and laptop.  (*Id.* at 11–13, 16.)  Further, the Court of Appeals found that there was a nexus between the crimes alleged and the electronic devices seized, and that in any event, a judge could have inferred that Petitioner could have transferred recorded evidence between the laptop and the cellphone that he uses as a rideshare driver. (*Id.* at 13–15.)  Additionally, in his Petition for Review, Petitioner raised the same issue regarding whether there was probable cause for the search and seizure of electronic devices under the warrant that allegedly obtained evidence in violation of Petitioner's Fourth Amendment right, which was subsequently denied by the California Supreme Court.  (ECF Nos. 5-11 at 4, 6–11; 5-12 at 1.)

The fact that Petitioner was able to raise his claim at multiple levels of the California court system, where the parties briefed the issue in the trial and appellate court, as well as had a hearing in the state trial court, compels the conclusion that the Petitioner had a full and fair opportunity to litigate his claim under *Stone*.  *See Locks*, 703 F.2d at 408 (finding that the petitioner received a "full and fair consideration of his Fourth Amendment claim" when the petitioner litigated the search and seizure issue in the trial court and the appellate

courts); *see also* Cal. Penal Code § 1538.5; *Terronova*, 912 F.2d at 1178–79 (the "extent to which [Fourth Amendment] claims were briefed before and considered by the state trial and appellate courts" is a consideration in determining whether petitioner had the opportunity for a full and fair litigation of those claims); *Gordan*, 895 F.2d at 613–14 (finding that California's suppression procedures as set forth in California Penal Code § 1538.5 provide an adequate opportunity to litigate a Fourth Amendment claim).

Petitioner also argued that *Stone* did not categorically bar his writ of habeas relief since he pled guilty and his case never went to trial. (ECF Nos. 1-2 at 10; 6 at 3.) However, *Stone* still applies in cases that involve guilty pleas which did not result in a trial. *See Nordahl v. Rivera*, No. 08-CV-5565-KMK-LMS, 2013 WL 1187478, at *8–*10 (S.D.N.Y. Mar. 2013) (finding that despite pleading guilty, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim under *Stone* when he raised this issue in his suppression motion before the state trial and appellate court); *Church v. Corcoran*, No. 9:07-CV-01118-JKS, 2010 WL 419950, at *9–*10 (N.D.N.Y. Jan. 2010) (finding that petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, in a case that did not go to trial and the petitioner pleaded guilty). And all *Stone* requires is the initial opportunity for a fair hearing. *See Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).

In his Opposition, Petitioner argued that he did not receive a full and fair opportunity to litigate his Fourth Amendment claim since the factual determinations of probable cause in support of SW-125 by the state courts were not fairly supported by the record as a whole, which Petitioner alleged was an exception to *Stone* under *Mack*. (ECF No. 6 at 3.) However, the Court in *Mack* actually rejected this contention that the decision by the state court of appeals had been less than full and fair when the court's decision was based on an incorrect consideration of facts not in the record. 564 F.2d at 901. The delineated situations where Petitioner claims an evidentiary hearing is not "full and fair," is actually a test set forth by *Townsend v. Sain*, 372 U.S. 293 (1963). *See Mack*, 564 F.2d at 900; (ECF No. 6 at 3). The *Mack* Court cautioned using the *Townsend* test since it was concerned with the accuracy of the state court's decision making, which was a

consideration that was not relevant in *Stone* and may actually surpass *Stone*'s requirement of only extending an opportunity for full and fair consideration of Fourth Amendment claims in certain circumstances. *Id.* The *Mack* Court then continued its analysis under *Stone* in determining whether the habeas applicant had received a full and fair opportunity to litigate his claims in the state court and declined to analyze the state court's factual determinations. *Id.* at 900–02. The Court indicated that although the state appellate court's opinion had incorrectly summarized an officer's affidavit, "that court's mistaken recitation of the facts, even assuming arguendo that it resulted in an incorrect decision, was not enough, in and of itself, to establish that the petitioner's claims had not been fully and fairly considered" and affirmed denial of the petition for a writ of habeas corpus on the basis of the *Stone*. *Id.*

Contrary to Petitioner's argument, the one exception in *Mack* where an evidentiary hearing is not "full and fair" is not required by *Stone* and courts have still found an opportunity for full and fair litigation their Fourth Amendment claims where the state appellate court upheld the claim on incorrect factual determinations. *See Locks*, 703 F. 2d at 408 (where petitioner argued that the state court considered evidence not offered at the suppression hearing, the Ninth Circuit rejected petitioner's argument that he did not receive a full and fair consideration of his Fourth Amendment claim); *Mack*, 564 F. 2d at 902 ("[T]he court's mistaken recitation of the facts, even assuming arguendo that it resulted in an incorrect decision, is not enough, in and of itself, to establish that Mack's claims were not fully and fairly considered."); *see also Ortiz-Sandoval*, 81 F.3d at 899 (finding that the Fourth Amendment claim was barred under *Stone*, where a state appellate court upheld protective sweep under *Maryland v. Buie* despite the trial court's failure to considered *Buie*). In fact, as noted in *Mack*, one of the appeals rejected in *Stone* involved the issue of an appellate court improperly upholding a warrant by considering facts not in the affidavit. *See Mack*, 564 F.2d at 902; *see also Locks*, 703 F.2d at 408.

In any event, Petitioner's disagreement with the state courts' factual and legal conclusions regarding his Fourth Amendment claim does not exempt him from *Stone*, since

a finding that the Petitioner had a "full and fair opportunity" to litigate his claims does not depend on whether his claims were correctly decided by the state courts. *Ortiz–Sandoval*, 81 F.3d at 899; *see also Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (*Stone* doctrine barred Fourth Amendment claim, notwithstanding contention that the hearing received was not full and fair because the state court's factual findings were "not supported by the evidence," when the petitioner raised the Fourth Amendment issue in a pretrial motion; a hearing was held, at which the petitioner was able to present evidence and examine witnesses; the trial court made a factual finding; and the trial court's decision was reviewed on appeal by the state high court); *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994) (petitioner's argument challenging the validity of his search, as in this case, "goes not to the fullness and fairness of the opportunity to litigate the claim, but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant"); *Locks*, 703 F.2d at 408 (rejecting argument that petitioner did not receive a full and fair hearing because the state appellate court considered evidence not offered at the suppression hearing); *Mack*, 564 F.2d at 902 ("A federal court may not relitigate a fourth amendment issue tried fully and fairly in a state court, regardless of its view of the correctness of the state decision.").

Accepting all allegations of material fact as true and construing them in the light most favorable to the non-moving party, the Court finds that Petitioner was provided a full and fair opportunity to litigate his § 1538.5 motion in his attempt to suppress the evidence found pursuant to SW-125 based on violating the Fourth Amendment. The Petitioner's Fourth Amendment argument in his § 1538.5 motion was rejected by the state courts at the trial and California Court of Appeal levels, which demonstrates that he received the requisite full and fair opportunity to litigate his claim. The fact that the Petitioner did not prevail when he attempted to exercise this remedy is irrelevant under *Stone*. Therefore, the Court finds that Petitioner was provided with a full and fair opportunity in state court to litigate Ground One in the Petition. Pursuant to the *Stone* doctrine, Ground One in Petitioner's

habeas petition is barred from federal habeas review.  As a result, IT IS THEREFORE RECOMMENDED THAT that this claim be DISMISSED.

### C. GROUND 2 – DUE PROCESS

#### 1. Applicable Law

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[F]ederal habeas corpus relief does not lie for errors of state law." *Id.* at 67; *see also Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'").  Specifically, it is not this Court's role to determine whether California's laws or regulations were correctly applied in petitioner's state court case. *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011); *see also Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.").

A "mere error of state law is not a denial of due process" and merely asserting due process violations cannot "transform a state-law issue into a federal one." *Swarthout*, 562 U.S. at 222; *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  When there is no question concerning a federally significant external event, state trial court rulings on the admissibility of evidence may not be questioned in a federal habeas proceeding. *See Crisafi v. Oliver*, 396 F.2d 293, 294–95 (9th Cir. 1968); *Chavez v. Dickson*, 280 F.2d 727, 736 (9th Cir. 1960).  And when a petitioner alleges only a violation of state law, no federal claim is presented and the petition is subject to dismissal. *Favors v. Eyman*, 466 F.2d 1325, 1327 (9th Cir. 1972).

Absent a specific constitutional violation, federal habeas review of a state court trial error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43 (1974); *see also Chavez*, 280 F.2d at 735 ("It is only where criminal trials in

state courts are conducted in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice that due process is offended and that federal court interference is warranted."). The "denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice [and] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Wilmont v. McEwen*, 520 F. App'x 597, 597–98 (9th Cir. 2013) (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941)); *see also Musladin v. Lamarque*, 555 F.3d 830, 850 (9th Cir. 2009) ("We need not consider the merits of [petitioner's] claim regarding the exclusion of evidence because we conclude that any error did not 'fatally infect[ ] the trial.'"). Whether a state court's error was so prejudicial as to deprive petitioner of due process is a question of law and a federal district court is not bound by a state court's conclusion that the error was not prejudicial. *Chavez*, 280 F.2d at 737. And "[u]nless fundamental fairness is abridged, federal court interference is unwarranted." *See Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986); *Nguyen v. Macomber*, No. 15-CV-00228-BLF, 2017 WL 2652874, at \*17 (N.D. Cal. June 2017).

## 2. Parties' Positions

Respondent requested that the Court dismiss Ground Two of Petitioner's habeas petition, stating that there is no basis for granting relief because it relies only on state law. (ECF No. 4-1 at 13–14.) Respondent pointed out that Petitioner had already argued that the warrant used to seize his computer and phone, SW-125, was defective under state statute. (*Id.* at 14.) Respondent indicated that while accepting Petitioner's argument as true, the California Court of Appeal still determined that Petitioner pleaded guilty upon evidence that was properly admissible against him under state law since the evidence from the computer and phone had been obtained through independent and unchallenged warrants. (*Id.*) Respondent stated that the Court of Appeal held that the Petitioner had not established prejudice regarding the application of the ECPA since Petitioner's requested

1  relief was denied on the grounds that the evidence had been retrieved through these
2  subsequent warrants.  (*Id.*; *see also* ECF No. 5-10 at 20–21.)

3        Petitioner argued that despite being created by the state legislature, his ECPA claim
4  is cognizable in federal court due to being fundamentally connected to the Fourth
5  Amendment and that even if the Court declines to recognize the ECPA's constitutional
6  underpinnings, arbitrary and capricious applications of state laws are still cognizable in
7  habeas proceedings.  (ECF No. 6 at 4–5.)  Petitioner claimed that the state court's factual
8  findings were objectively unreasonable and that the state court's application of the ECPA
9  infected the proceedings with unfairness, resulting in the Petitioner pleading guilty and
10  making the resulting conviction a denial of due process.  (ECF Nos. 1-2 at 15; 6 at 6.)
11  Petitioner argued that he was prejudiced due to the state court's denial of his § 1538.5
12  motion, which he claimed had a material effect on the state of the evidence, since the
13  evidence found pursuant to SW-125 should have been suppressed for failing to conform to
14  the ECPA.  (ECF Nos. 1-2 at 15–16; 6 at 6.)

15        **3. Analysis**

16        In state court, Petitioner's argument involved SW-125 and its alleged violation of
17  state law, the ECPA, due to lacking the particularity requirement and paragraph 5's
18  authorization "[t]o seize, view, and forensically examine" the electronic devices, while not
19  involving any constitutional violations.  (*See* ECF Nos. 5-1 at 81–90, 135–37; 5-7; 5-9.)
20  Petitioner claimed that since SW-125 failed to comply with the ECPA by not specifying
21  the time periods for the electronic information sought and did not specify the types of
22  information sought, it lacked sufficient probable cause, and thus the electronic information
23  obtained as a result of SW-125 should have been suppressed.  (ECF Nos. 5-1 at 87–88; 5-
24  7 at 15–17.)  The California Court of Appeal pointed out that the "Fourth Amendment and
25  the ECPA provide independent legal standards for establishing whether evidence must be
26  suppressed under section 1538.5's procedures" and indicated that the Petitioner did not
27  raise a Fourth Amendment claim under the ECPA.  (ECF Nos. 5-10 at 17–18 n.11; 20
28  n.13.)  Thus, the Court finds that Petitioner's second claim directly involves a state court

allegedly improperly applying a state law, the ECPA.[2]  (ECF Nos. 1-2 at 15–16; 5-10 at 16–21; 6 at 4–7.)

Since the core of Petitioner's second claim is that the California courts misapplied a California statute, federal habeas review of a state court trial error is limited to whether the error resulted in prejudice that "infected [his guilty plea] with unfairness as to make the resulting conviction a denial of due process."  *See, e.g., Little*, 449 F.3d at 1083 n.6 ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."); *Donnelly*, 416 U.S. at 642–43 (finding that absent a specific constitutional violation, federal habeas review of a state court error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process."); *Chavez*, 280 F.2d at 735 ("It is only where criminal trials in state courts are conducted in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice that due process is offended and that federal court interference is warranted.").

The ECPA indicates that any warrant for electronic information "shall describe with particularity the information to be seized by specifying [and] the time periods covered[.]" Cal. Penal Code § 1546.1(d)(1).[3]   The alleged state court error that Petitioner raised

---

[2] The Court has already addressed the Fourth Amendment issue in Section IV(B).

[3] California Penal Code § 1546.1(d)(1) states:

> Any warrant for electronic information shall comply with the following: (1) The warrant shall describe with particularity the information to be seized by specifying, as appropriate and reasonable, the time periods covered, the target individuals or accounts, the applications or services covered, and the types of information sought, provided, however, that in the case of a warrant described in paragraph (1) of subdivision (c), the court may determine that it is not appropriate to specify time periods because of the specific circumstances of the investigation, including, but not limited to, the nature of the device to be searched.

When electronic information is obtained in violation of the ECPA, the procedural mechanism for suppressing the evidence at issue is through California Penal Code §1546.4(a), which indicates that any motion to suppress any electronic information must be made in accordance with the procedures set in

involves SW-125 and its noncompliance with the ECPA, specifically not complying with the ECPA's particularity requirement and paragraph 5's authorization "[t]o seize, view, and forensically examine" the electronic devices. (*See* ECF Nos. 1-2 at 16; 5-1 at 81–90, 135–37; 5-7; 5-9; 6 at 6.) Petitioner alleged that this error led to the admission of evidence, which Petitioner claimed infected the proceedings with unfairness as to make the resulting conviction a denial of due process and affected Petitioner's decision on whether to plead guilty. (*See* ECF Nos. 1-2 at 16; 6 at 6.)

The Court of Appeals did not address whether the state trial court actually erred, it "assume[d] without deciding" that SW-125 did not comply with the ECPA and only focused on whether the Petitioner had demonstrated that he was prejudiced by SW-125's noncompliance with the ECPA. (ECF No. 5-10 at 19–21.) Therefore, presuming that the state court erred in its application of the ECPA, Petitioner would still need to proffer sufficient facts to state a claim to relief that this alleged error was so prejudicial as to constitute a denial of "that fundamental fairness essential to the very concept of justice" and absence of that fairness fatally infected his decision to plead guilty. *See Lisenba*, 314 U.S. at 236; *Wilmont,* 520 F. App'x at 597–98.

Accepting all Petitioner's allegations regarding Ground Two as true and construing them in the light most favorable to the non-moving party, Petitioner has failed to proffer sufficient facts to state a plausible claim that the state court's error infected his guilty plea with unfairness as to make the resulting conviction a denial of due process. There is no indication in the record that any electronic information from Petitioner's laptop and cellphone were accessed or forensically examined pursuant to SW-125. In fact, nothing in the record shows that SW-125's paragraph 5 was ever executed. The record indicated that SW-125 was used to only seize, not search, Petitioner's laptop and cell phone. Nothing

---

California Penal Code §1538.5. Further, any person whose information is targeted by the warrant may also ask the court to void or modify a warrant, order, or other legal process that violates the ECPA. Cal. Pen. Code §1546.4(c).

from the record suggests, and Petitioner has not alleged facts showing, that SW-125 actually produced the evidence that the Petitioner claimed should have been suppressed and on which he relied upon to plead guilty.  In fact, the record indicates that the evidence that Petitioner claimed to be prejudicial and to have infected his decision to plead guilty was produced from two later warrants, Nos. E2016-254 and E2016-352.  (ECF No. 5-10 at 20.)  Petitioner has even acknowledged that these electronic devices were forensically examined under the two other warrants.  (ECF Nos. 5-1 at 84; 5-10 at 20.)  Petitioner has not alleged sufficient facts to show that he was prejudiced from the issuance of SW-125 when the record shows that the alleged prejudicial evidence came from the two other warrants.  Petitioner has not claimed that these two other warrants were invalid or produced evidence that were in violation of state law.

The Court cannot disturb a state court's admission of evidence allegedly obtained pursuant to SW-125 on due process grounds unless the admission of the evidence rendered Petitioner's decision to plead guilty fundamentally unfair.  As noted above, Petitioner has not proffered sufficient facts to state a plausible claim that alleges that the state court error in issuing SW-125 resulted in unfairness as to make the resulting conviction a denial of due process.  After careful consideration of the record, the Court finds that the alleged state court error in issuing SW-125 did not result in unfairness that fatally infected his decision to plead guilty.  *See Lisenba*, 314 U.S. at 236; *Wilmont,* 520 F. App'x at 597–98.  As indicated above, the electronic devices seized were not searched pursuant to SW-125 and SW-125 did not produce the evidence which he claims should have been suppressed.  Adding verbiage of his right to a fair trial regarding the state court's determination of a state law does not transform Petitioner's claim into a cognizable claim for habeas relief.  *See Johnson v. Davis*, No. CV 14-3056-JVS-MAN, 2014 WL 2586883, at *5 (C.D. Cal. June 2014) ("Draping this question of state law in the verbiage of due process or equal protection does not render the claim cognizable here.").

In sum, Petitioner has failed to proffer sufficient facts to show that the alleged error in the state's application of the ECPA rose to the level of fatally infecting Petitioner's

decision to plead guilty with unfairness. And since Petitioner has not alleged sufficient facts to state a claim that is plausible on its face to show prejudice to the extent that he was denied the fundamental fairness essential to the very concept of justice, "federal court interference is unwarranted." *See Kealohapauole*, 800 F.2d at 1465. Therefore, Petitioner is not entitled to habeas relief on the basis of this claim. As a result, IT IS THEREFORE RECOMMENDED THAT that this claim be DISMISSED.

### D. EQUAL PROTECTION CLAIM

#### 1. Parties' Positions

Respondent argued that Petitioner may be attempting to raise an additional legal claim for the first time, the denial of his right to equal protection of the laws under the Fourteenth Amendment.[4] (ECF No. 4-1 at 15–16.) Respondent stated that there is no reason to consider this new ground for relief, since this claim was not previously raised in state court and is likely procedurally defaulted due to his failure to obtain a certificate of probable cause. (*Id.*)

Petitioner argued that the "state court's application of the ECPA was so arbitrary and capricious that it not only violated equal protection of the laws, it infected the proceedings with unfairness as to make the resulting conviction a denial of due process." (ECF No. 6 at 6.) Although he admitted to not referring explicitly to his equal protection claim under the Fourteenth Amendment in state court, Petitioner argued that this Fourteenth Amendment is not procedurally barred. (*Id.* at 7–8.) Petitioner stated that a "crux of his petition for review is the arbitrary enforcement of the ECPA" and that there is a possibility of future California courts applying the statute disparately. (*Id.* at 7.) Petitioner claimed

---

[4] Another argument that Respondent claimed Petitioner raised for the first time in federal court was the violation of his Right to a Fair Trial under the Sixth Amendment. (ECF No. 4-1 at 14–15.) Petitioner raised this argument in regard to his claim that he did not have a full and fair opportunity to litigate his Fourth Amendment claim. (ECF No. 6 at 2–4.) Petitioner even indicated that the "underpinning of [his Right to a Fair Trial under the Sixth Amendment] is a violation of the Fourth Amendment." (*Id.* at 4.) However, as indicated above in Section IV(B)(2), Petitioner had a full and fair opportunity to litigate this Fourth Amendment claim, thus the Court does not need to address this Sixth Amendment claim.

1    that the Fourteenth Amendment prevents states from denying "to any person within its

2    jurisdiction the equal protection of the laws" and that he still fairly presented this

3    Fourteenth Amendment claim in state court because his argument revolved around

4    preserving, protecting and enforcing a state privacy law.  (*Id.* at 7–8.)

5        **2. Analysis**

6          **a. Exhaustion**

7        State courts must have the first opportunity to review all claims of constitutional

8    error and prisoners seeking federal habeas corpus relief must first exhaust all state court

9    remedies before a federal court may grant such relief.  *See* 28 U.S.C. § 2254(b); *Rose v.*

10   *Lundy*, 455 U.S. 509, 520 (1982); *see also Dixon v. Baker*, 847 F.3d 714, 718 (9th Cir.

11   2017) (petitioner must seek full relief first from the state courts, to give those courts the

12   first opportunity to review all claims of constitutional error).  "To provide the State with

13   the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate

14   state court (including a state supreme court with powers of discretionary review), thereby

15   alerting that court to the federal nature of the claim."  *See Baldwin v. Reese*, 541 U.S. 27,

16   29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *O'Sullivan v. Boerckel*,

17   526 U.S. 838, 845 (1999)); *see also Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir.

18   1999) ("The state courts have been given sufficient opportunity to hear an issue when the

19   petitioner has presented the state court with the issue's factual and legal basis.").  The

20   petitioner must reference specific provisions of the federal constitution or statutes or cite

21   to federal case law.  *See Lyons v. Crawford*, 232 F.3d 666, 668, 670 (9th Cir. 2000) *as*

22   *modified by* 247 F.3d 904 (9th Cir. 2001)).

23        The record does not indicate that the state courts in this case were given the first

24   opportunity to review Petitioner's Fourteenth Amendment equal protection claim.  (ECF

25   Nos. 5-1 at 79–137 [Trial Court Briefs]; 5-7 [Petitioner's Appellate Opening Brief]; 5-9

26   [Petitioner's Appellate Reply Brief]; 5-10 [California Appellate Court Opinion]; 5-11

27   [Petition for Review].)  In fact, Petitioner admitted that he did not explicitly reference this

28   claim in his appeal or petition for review.  (ECF No. 6 at 7); *see also Lyons*, 232 F.3d at

668 ("[T]he petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is 'self-evident[.]'""). Therefore, the Court finds that Petitioner's equal protection claim under the Fourteenth Amendment is unexhausted and subject to dismissal. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."); *Johnson v. Zenon*, 88 F.3d 828, 829–30 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

### b. Merits

While relief may not be granted on an unexhausted claim, the Court may exercise discretion to deny a claim on the merits, despite a petitioner's failure to fully exhaust state judicial remedies, if "it is perfectly clear that the applicant does not raise even a colorable federal claim." *See* 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005) (citing *Granberry v. Greer*, 481 U.S. 129, 135 (1987)); *see also Underdahl v. Hill*, No. 20CV1292-AJB-BLM, 2020 WL 7385846, at *6 (S.D. Cal. Dec. 2020) ("Petitioner's failure to exhaust does not preclude the Court from adjudicating these contentions because, for the reasons discussed below, Claim One subparts (a), (d), (e), (g) and (h) each clearly fail on the merits.").

The Court finds that it can address Plaintiff's Fourteenth Amendment equal protection claim. "The equal protection clause prohibits a state from affording one person [. . .] the [. . .] benefit of a ruling [. . .] while denying it to another." *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) (citing *Myers v. Ylst*, 897 F.2d 417, 421 (9th Cir. 1990)). A petitioner cannot establish an equal protection claim warranting habeas relief by simply alleging the state court misapplied state law or departed from past precedents. *See Little*, 449 F.3d at 1083 ("Little cannot establish an equal protection claim warranting habeas relief, simply because, or if, the Nevada Supreme Court misapplied Nevada law or departed

from its past precedents."); *see also Beck v. Washington*, 369 U.S. 541, 554–55(1962) (holding that the Equal Protection Clause did not ensure uniformity in judicial decision making). The alleged state court error would have to constitute "a fundamental defect which inherently result[ed] in a complete miscarriage of justice, or exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Little*, 449 F.3d at 1083 (internal quotations omitted).

Petitioner has alleged in his Opposition that "the state court's application of ECPA was so arbitrary and capricious that it not only violated equal protection of the laws, it infected the proceedings with unfairness as to make the resulting conviction a denial of due process." (ECF No. 6 at 6.) Petitioner claimed that the "factual findings upon which the state court's adjudication of [his] ECPA claim rests are unquestionably arbitrary and capricious because they directly contravene the express language of ECPA." (*Id.*) Petitioner argued that "[i]n light of this unreasonable interpretation of the statute, [he] was denied his Fourteenth Amendment right to equal protection of the laws, and he should be granted habeas relief accordingly." (*Id.* at 6–7.)

However, the California Court of Appeal did not address whether SW-125 violated the ECPA, it "assume[d] without deciding" that SW-125 did not comply with the ECPA and only focused on whether the Petitioner was prejudiced by SW-125's noncompliance with the ECPA. (ECF No. 5-10 at 19–21.) Nothing in the record indicates, and Petitioner has not alleged facts that shows, that the Court of Appeals actually made an interpretation of the ECPA. The only factual finding the Court of Appeals made was that Petitioner was not prejudiced by the alleged ECPA violation. (*Id.* at 20–21.)

Further, Petitioner never addressed how the state court's application of the ECPA violated the equal protection clause. (*See* ECF No. 6 at 6–7.) Petitioner failed to provide any facts besides his conclusory statement that the state court committed an error that resulted in the violation of his equal protection rights, which is not enough to survive a motion to dismiss and does not warrant habeas relief. *See Ashcroft v. Iqbal*, 556 U.S. at 678 (finding that "threadbare recitals" of the elements of a cause of action, "supported by

27

mere conclusory statements," are not enough to survive a motion to dismiss); *Jones v. Gomez*, 66 F.3d 199, 204–05 (9th Cir. 1995) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *Maciel v. Ylst*, 8 F.3d 28 (9th Cir. 1993) ("[Petitioner] must make an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises. [ ] This he has not done; therefore, he has not stated a cognizable equal protection claim.").

Assuming arguendo that Petitioner did allege sufficient facts that the ECPA violated the equal protection clause, Petitioner still cannot establish an equal protection claim warranting habeas relief simply by alleging that a California court erred in misapplying California law. "Under clearly established Supreme Court law, such contention [regarding a state court misapplying state law] neither gives rise to an equal protection claim, nor provides a basis for habeas relief." *Little*, 449 F.3d at 1082. A "mere misapplication of the law or judicial error does not trigger equal protection concerns" since the Fourteenth Amendment "does not assure uniformity of judicial decisions or immunity from judicial error." *See*, *e.g.*, Beck, 369 U.S. at 554–55; *Williams v. Sterns*, No. CV141417PHXDLRJFM, 2015 WL 6769100, at *21 (D. Ariz. Aug. 2015) (stating that a mere misapplication of state law or state judicial error did not trigger equal protection concerns since the "Fourteenth Amendment to the Constitution in guaranteeing equal protection of laws, does not assure uniformity of judicial decisions or immunity from judicial error"), *report and recommendation adopted*, No. CV-14-01417-PHX-DLR, 2015 WL 6749046 (D. Ariz. Nov. 2015); *Wesley v. Marshall*, No. CV 08-2456-JFW-RC, 2010 WL 3371240, at *5 (C.D. Cal. July 2010) (regarding a claim that essentially involved a state court misapplying state law, the court held that the claim was not cognizable in federal court and that even viewed on the merits, the petitioner's claim failed since the Fourteenth Amendment did not assure uniformity of judicial decisions or immunity from judicial error), *report and recommendation adopted*, No. CV 08-2456-JFW RC, 2010 WL 3371226 (C.D. Cal. Aug. 2010); *Hall v. Harrison*, No. 05-CV-1261-W-CAB, 2007 WL 1449807, at *2 (S.D. Cal. May 2007) (holding that an allegation that a state court misapplied or departed

from an earlier decision does not give rise to an equal protection claim nor does it provide a basis for federal habeas relief, in a case regarding the petitioner's allegation that the state court made an incorrect interpretation of state law).

In order to warrant habeas relief, Petitioner would need to provide sufficient facts to show that the California court's alleged error in misapplying state law "violated the Constitution, laws, or treaties of the United States." *See Estelle*, 502 U.S. at 68. Such a violation is demonstrated when "the [state court's] alleged error constituted 'a fundamental defect which inherently result[ed] in a complete miscarriage of justice," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *See Little*, 449 F.3d at 1083.

Petitioner merely alleged that the state court erred in applying state law that violated his right to "equal protection of the laws," which "infected the proceedings with unfairness as to make the resulting conviction a denial of due process." (ECF No. 6 at 6.) Petitioner then claimed that the state court's factual findings as to his ECPA claim are "unquestionably arbitrary and capricious" and that he was denied his Fourteenth Amendment right to equal protection of the laws due to the court's "unreasonable interpretation of the statute[.]" (*Id.* at 6–7.) Besides these allegations, Petitioner did not add any other facts to show that the California court's application of the ECPA was a violation of the equal protection clause which constituted a fundamental defect that resulted in a complete miscarriage of justice or that other exceptional circumstances are present that requires habeas relief, thus failing to state a plausible claim for relief.

Therefore, accepting all the allegations regarding Petitioner's Fourteenth Amendment equal protection claim as true and construing them in the light most favorable to the non-moving party, Petitioner has failed to state a cognizable equal protection claim that is plausible on its face. Accordingly, IT IS THEREFORE RECOMMENDED THAT that this claim be DISMISSED.

///

///

29

### E. REQUEST FOR EVIDENTIARY HEARING

In his petition and in his Opposition to Defendant's Motion to Dismiss, Petitioner asks this Court to conduct an evidentiary hearing on his claims. (*See* ECF Nos. 1-2 at 16; 6 at 3.) A federal court's discretion to hold an evidentiary hearing is governed by 28 U.S.C. §2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—(A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously made unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

"Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Here, Petitioner requests for an evidentiary hearing "so that this Court can determine whether the state court's factual determinations are supported by the record." (ECF No. 6 at 3.) However, Petitioner does not establish that his request relies on a new rule of constitutional law, or a factual predicate that could not have been previously discovered through the exercise of due diligence. *See id.* Similarly, Petitioner has not alleged facts that would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. *See id.* Accordingly, IT IS THEREFORE RECOMMENDED THAT Petitioner's request for an evidentiary hearing be DENIED.

### V.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, (2) **GRANTING** Respondent's Motion to Dismiss (ECF No. 4), and (3) **DISMISSING** the Petition.

**IT IS ORDERED** that no later than **August 2, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 16, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  July 16, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge

20-cv-01783-BAS-BGS